# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRIAN SIMMONS                                    CIVIL ACTION

VERSUS                                            NO. 12-674-SDD-RLB

HONEYWELL INTERNATIONAL, INC.

## RULING

This matter is before the Court on the *Motion for Summary Judgment* filed by the Defendant, Honeywell International, Inc. ("Defendant" or "Honeywell").[1] Plaintiff, Brian Simmons, has filed an *Opposition* to the motion.[2] For the reasons which follow, the Court finds that the motion should be granted.

I.     **Factual Background**

Plaintiff, who is employed by Ingersoll-Rand, claims that on October 25, 2011, while working at the Honeywell plant, he was exposed to hydrochloric acid, chlorine, and hydrogen fluoride which were released into the atmosphere due to a broken pipe. Plaintiff has filed suit against Honeywell, claiming he has suffered severe injuries as a result of this exposure.

Honeywell acknowledges that Plaintiff was working at its plant on the date in

---

[1] Rec. Doc. No. 14.

[2] Rec. Doc. No. 18.

Doc 568                                          1

question, and that a pipe in Plaintiff's vicinity unexpectedly ruptured causing a limited amount of chemicals to be released into the air. Honeywell states that Plaintiff was working pursuant to a contract between Honeywell and Ingersoll-Rand wherein Honeywell was designated as the statutory employer of Plaintiff for purposes of the Louisiana Workers Compensation Act ("LWCA" or "the Act"). At the time of Plaintiff's alleged injuries, Honeywell argues that the work being performed by Plaintiff was integral to Honeywell's trade, business, and occupation, and essential to Honeywell's ability to generate its goods, products, or services. Honeywell moves for summary judgment on the basis that, as its statutory employee, Plaintiff's remedies are limited to those available under the LWCA.

In opposition to Honeywell's motion, Plaintiff contends that the work he was performing was not an "integral part" of Honeywell's operation because the air compressor on which he was working was not installed at the time of the incident. Plaintiff also contends, for the first time in this litigation, that he is entitled to the "intentional act exception" set forth in La. R.S. 23:1032(B). Plaintiff alleges that Honeywell "intentionally put its employees and visitors in harms [sic] way because the plant was consistently producing products while the compressor was not installed in the Honeywell plant's safety operation," and "Honeywell's plant management knew that the result of chemical leak and exposure to those chemicals was substantially certain to follow from operating the plant absent a safety shutdown system."[3]

---

[3] Rec. Doc. No. 18, p. 8.

Doc 568          2

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[6] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[7]

If the moving party meets this burden, Rule 56 (c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[8] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla

---

[4] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[6] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[7] *Id.* at 1075.

[8] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

of evidence.[9] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[10] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[12]

## B. Statutory Employer Relationship Under the LWCA

Because this is a diversity case, state law provides the elements of Plaintiffs' claims.[13] Pursuant to the LWCA, an employer must provide workers' compensation benefits to its injured employees. In exchange, the employer receives immunity from suits in tort arising from any accidental injuries sustained by an employee.[14] Thus, the Act provides the exclusive remedy for injury claims unless otherwise provided by statute.[15] This tort immunity is extended not only to an employee's direct employer but also to any statutory employer pursuant to Louisiana law, which provides that a principal who contracts

---

[9] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

[10] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[11] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[13] *See Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1356 (5th Cir. 1993)(citations omitted).

[14] La. R.S. § 23:1032(A)(1)(A)("the rights and remedies herein granted ... shall be exclusive of all other rights, remedies, and claims for damages...").

[15] La. R.S. § 23:1032(B)("Nothing in this Chapter shall affect the liability of the employer, ... to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.").

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 4 of 19

with another entity to "execute any work, which is a part of his trade, business, or occupation" is entitled to immunity from suit in tort as a statutory employer of the contractor's employees.[16]

A statutory employer relationship arises in either of two situations: (1) whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer,[17] and (2) when there is a written contract between the principal and the employee's immediate employer that explicitly recognizes the principal as the employee's statutory employer.[18] Where there is a written contract that purports to recognize the principal as the employee's statutory employer, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees."[19] "This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate the individual principal's goods, products, or services."[20]

In this case, Honeywell has submitted its contract agreement with Ingersoll-Rand,

---

[16] La. R.S. § 23:1061(A)(1).

[17] La. R.S. § 23:1061(A)(2).

[18] La. R.S. § 23:1061(A)(3).

[19] *Id.*

[20] *Id.*

which specifically provides for a statutory employer relationship.[21] None of the parties appear to contest this contractual provision. Thus, the presumption is that Honeywell was Plaintiff's statutory employer at the time of the incident. This presumption may only be overcome if Plaintiff demonstrates that the work performed was not "an integral part of or essential to the ability of the principal to generate the individual principal's goods, products, or services."[22]

Plaintiff contends that he was working on an air compressor that was not being used by the plant; thus, the compressor was not an integral part of Honeywell's operation because the plant was producing products before, during, and after Plaintiff's presence at the plant. Plaintiff further contends that the air compressor had not been installed on the date of the incident, and therefore, could not have been operating when Plaintiff arrived because parts of the compressor were assembled backwards which rendered it non-functional. Plaintiff cites the deposition of Terry Boudreaux ("Boudreaux"), Honeywell's Project Manager, who testified that the air compressor was brand new and had not been used.[23] Specifically, Plaintiff argues the air compressor was not an integral part of Honeywell's operation because: "(1) [t]he air compressor was not installed in the Honeywell

---

[21] Paragraph 27.2 of the Purchase Order states: "For any Goods provided under this Purchase Order in jurisdictions with statutory employer protections, Supplier and Honeywell stipulate that Honeywell is deemed to be the statutory employer of Supplier's employees and all employees of any sub-tier contractor retained in any manner by Supplier, who perform services or access Honeywell's property and such status is limited to the period in which the preceding actions occur. Supplier and Honeywell further stipulate that all services performed pursuant to this Purchase Order are an integral part of or essential to Honeywell's production of its goods or delivery of its services." Rec. Doc. No. 14-3, Exhibit 2.

[22] The burden of rebuttal rests on the Plaintiff once the presumption of statutory employer status has arisen. *Everett v. Rubicon, Inc.*, 2004-1988 (La. App. 1 Cir. 6/14/06), 938 So.2d 1032, 1042.

[23] Rec. Doc. No. 18-5, Deposition of Terry Boudreaux, pp. 14, 20.

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 6 of 19

Plant;[24] (2) [t]he air compressor was in another building, far removed from the production system of the Honeywell Plant;[25] (3) [t]he Honeywell Plant was in full function producing its products absent the air compressor;[26] [and] (4) [t]he air compressor did not function from date of assembly."[27]

Honeywell takes exception to Plaintiff's interpretation and characterization of the testimony of Honeywell employees wherein he suggests that the work he was performing was not an integral part of, or essential to, the ability of Honeywell to manufacture refrigerants. Honeywell contends Plaintiff was working on an upgrade to the chemical facility's compressed air system, a system which controlled not only the normal operation of the plant, but was also crucial to the safe shutdown of the facility's operations in the event of an emergency.[28] Honeywell also contends that the *Affidavits* of Boudreaux and Production Supervisor Steven A. Moore ("Moore") establish that the work performed by Plaintiff on the date of the accident was an integral part of, or essential to, Honeywell's ability to generate its products. According to Honeywell, Plaintiff has "cherry-pick[ed]" and "take[n] out of context" the portions of the testimony given by Boudreaux and Moore to support Plaintiff's argument.[29]

---

[24] Rec. Doc. No. 18, p. 7, citing Exhibit P4, p. 20.

[25] *Id.*, citing Exhibit P6, pp. 16-17.

[26] *Id.*, citing Exhibit P4, p. 28.

[27] *Id.*, citing Exhibit P1, p. 91.

[28] Rec. Doc. No. 19, p. 2.

[29] *Id.* at p. 3.

Honeywell argues that Boudreaux's testimony establishes that the purpose of the project on which Plaintiff was working was to upgrade the existing air compression system at Honeywell's facility. Honeywell avers it was eliminating the nitrogen system used to operate control valves during normal and shutdown operations at the facility. This upgrade was to be accomplished by the purchase of two new Ingersoll-Rand air compressors, one of which was purchased to replace a compressor which had previously failed, and an air receiver tank. The intended result of this project was to eliminate compressors in other parts of the plant and limit this function to one location. The purpose of the additional air receiver tank was to allow sufficient compressed air to operate control valves should the air compressors "trip" and fail to function.[30] Honeywell states that the new compressors and air receiver tank had already been installed when Plaintiff was called to work on the non-functioning receiver tank. Further, Honeywell claims, as Boudreaux testified, that the air receiver tank was "installed, piped up, and ready for use," when Honeywell discovered that the Ingersoll-Rand solenoid valve on the tank was not functioning.[31] It was this solenoid valve that Plaintiff was called out to repair as required by the Purchase Order between Honeywell and Ingersoll-Rand.

According to Honeywell, Plaintiff repeatedly confuses the term "air compressor" with "air receiver" in his brief. Honeywell also asserts that Boudreaux's testimony, when read as a whole and not piecemeal, clearly shows that the air receiver tank that Plaintiff was

---

[30] Rec. Doc. No. 19, p. 3, citing Rec. Doc. No. 18-2, Deposition of Terry Boudreaux (also Exhibit F), p. 13, lines 13-20, p. 27, line 16 - p. 28, line 5.

[31] *Id.* at p. 4, quoting Rec. Doc. No. 18-2, p. 17, lines 11-12.

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 8 of 19

working on at the time of the incident was a necessary addition to the compressed air system of the entire plant. Honeywell contends that once this air receiver was in place, it replaced the nitrogen-based backup system used in emergency shutdowns with compressed air because then it had sufficient capacity to store the compressed air required to perform an emergency shutdown in the event the compressors providing air supply failed.[32] Honeywell argues that Plaintiff's suggestion that the $200,000 plus upgrade of its air compressor system was not an integral part of, or essential to, its ability to manufacture refrigerants in a safe manner is simply not supported by the evidence or the established facts in this case. Honeywell also contends that Plaintiff's focus on the inoperable condition of the air receiver on the date of the incident is misplaced. Rather, Honeywell urges the Court to focus on the intended purpose of the receiver and its integration into the air compression system at the Honeywell plant in determining whether the contract work Plaintiff performed was essential to Honeywell's ability to manufacture refrigerants.

Based on the established facts, evidence in the record, and arguments presented by the parties, the Court finds the mere fact that a part of the compression system was inoperable and in need of repair did not render Plaintiff's work thereon a non-integral part of Honeywell's ability to manufacture its products. Furthermore, the Court finds that the cases relied upon by Plaintiff do not support his position. Plaintiff cites a plethora of cases where courts applied the statutory employer defense finding that the work performed

---

[32] *Id.*, at p. 5.

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 9 of 19

constituted an integral part of the various companies' production.[33] Plaintiff then attempts to distinguish the facts of his case from those cited. In each instance, he argues that it is because Honeywell was producing its products without the use of the air compressor (or air receiver) that this case is distinguishable. However, courts have frequently found that "certain work which is ancillary to the statutory employer's operations is nevertheless essential to the ability of the statutory employer's operations."[34]

For example, in *Berthelot v. Murphy Oil, Inc.*, the plaintiff responded to a call from a Murphy employee regarding a power outage at Murphy's oil refinery in Chalmette, Louisiana.[35] The plaintiff went to the refinery and began repairing a high voltage transformer, and allegedly suffered injuries when the transformer and a fuse blew up simultaneously.[36] The plaintiff argued that the power outage was confined to one restricted area and that the refinery continued to be operational and generate its products and

---

[33] *Blakely v. CITGO Petroleum Corp.*, 737 F.Supp.2d 599 (W.D. La. 2010)(court held that the construction and environmental clean-up services provided by R&R are plainly an essential part of operating a refinery); *Duncan v. Dow Pipeline Co.*, 2006-1455 (La. App. 3 Cir. 3/7/07), 952 So.2d 884 (court held that process of repairing structural integrity of oil pipeline platforms was an integral part of plant producing its product); *Jackson v. St. Paul Insurance Company*, 2004-0026 (La. App. 1 Cir. 12/17/04), 897 So.2d 684 (court held that construction of plant's fractionator was integral part of production of company's product); *Everett v. Rubicon, Inc.*, 2004-1988 (La. App. 1 Cir. 6/17/06), 938 So.2d 1032 (court held that performing work on brine receiver used to collect chemical waste in production of chemicals was integral part of company's production).

[34] *Alexander v. Broadmoor, LLC*, No. 04-3326, 2006 WL 1995687, at *3 (E.D. La. July 14, 2006) (*See Johnson v. Tennessee Gas Pipeline Co.*, 99 F.Supp.2d 755 (E.D.La.2000) (finding that contractor's work of performing catering services onboard an oil and gas compressor facility was integral and essential to the statutory employer's ability to operate its oil and gas compressor facility); *Applegarth v. Transamerican Refining Corp.*, 00-1547 (La.App. 5th Cir. 2/28/01), 781 So.2d 804, *writ denied*, 792 So.2d 738 (La.2001) (upholding summary judgment where contractor performed construction at a refinery where the refinery was not engaged in providing construction services).

[35] No. 09-4460, 2010 WL 103871 (E.D. La. Jan. 7, 2010).

[36] *Id.* at *1.

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 10 of 19

services during the outage.[37]

Based on the agreements between the relevant parties, the court found that Murphy was the statutory employer of the plaintiff, and that the burden was on the plaintiff to rebut this presumption.[38] The court rejected the plaintiff's argument that his work was not an integral part of or essential to Murphy's ability to generate its goods, products, or services, stating:

> The Court does not interpret the words "integral" and "essential" on a blank slate. The Louisiana legislature has made it very clear that these words should be expansively construed.[39] The Court has found only a single case finding that a contractor's work was not essential or integral to an employer's operations under the 1997 amendments.[40] Several courts, by contrast, have found that work outside an employer's core operations may still be essential or integral to its operations.[41] A Louisiana Court of Appeals has specifically held that repair work by an electric company employee was integral to the effective operation of Tulane University's library because students study and conduct research at all hours of the day and night.[42] The Court finds little to distinguish this case from Ramos, and Berthelot offers no help.[43]

---

[37] *Id.*

[38] *Id.* at * 6.

[39] *Id.*, citing *Ramos*, 2006-0487 (La. App. 4 Cir. 1/31/07), 951 So.2d 1267, 1270; *Jackson*, 897 So.2d at 689; *Everett*, 938 So.2d at 1042-43.

[40] *Id.* (*See Jordan v. Central Mgm't Co.*, 99-748 (La.App. 3d Cir. 10/31/99), 745 So.2d 116, 122 (finding luxury beautician services not essential or integral to nursing home).

[41] *Id.* (*See, e.g., Jordan*, 745 So.2d at 122.; *Johnson v. Tenn. Gas. Pipeline Co.*, 99 F.Supp.2d 755, 758 (E.D.La.2000) (finding catering services essential to oil and gas compressor facility); *Oliver v. Day & Zimmermann*, Civ. A. No. 05-3072, 2006 WL 508047, at *2 (E.D.La. Feb. 22, 2006) (finding security services essential to oil refinery's operations); *Hodges v. The Mosaic Co.*, Civ. A. No. 05-5201, 2007 WL 2008503, at *3 (E.D.La. July 6, 2007) (finding installation of electrician scaffolding essential to chemical manufacturer's operations).

[42] *Id.*, citing *Ramos*, 951 So.2d at 1270.

[43] *Id.*

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 11 of 19

The court likewise rejected the plaintiff's arguments that the work he performed was not integral or essential to Murphy's business because the work could not have been performed by Murphy itself and because Murphy continued producing goods and services while the work was being performed.[44] The court found that "this proposed interpretation of 'essential' and 'integral' is unsupported by legal authorities," and flatly rejected it.[45] The court continued: "**Restricting statutory employment to the rare situations in which an employer entirely ceases operations would eliminate workers' compensation for most contract workers**. This plainly was not the intent of the 1997 amendments, nor of Louisiana's workers' compensation legislation at any other point in its history.[46]

Applying the same reasoning in *Berthelot* and other relevant jurisprudence to the facts of this case, the Court finds that Plaintiff has failed to create a genuine issue of material fact that the work he was performing at the Honeywell plant on the date of the incident was not an integral part of, or essential to, the ability of Honeywell to generate its goods, products, or services. Accordingly, Plaintiff has also failed to rebut the presumption that he was Honeywell's statutory employee and is barred from asserting claims against Honeywell in tort unless Plaintiff's claims properly fall into the intentional act exception.

---

[44] *Id.* at * 7.

[45] *Id.*

[46] *Id.* (emphasis added).

## C. Intentional Act Exception[47]

The intentional act exception provides that an employee may sue in tort to recover beyond worker's compensation benefits when the injury is proximately caused by the employer's intentional tortious act.[48] "The words 'intentional act' mean the same as 'intentional tort' in reference to civil liability."[49] The exception requires that the person acting and causing injury must either (1) "consciously desire[ ] the physical result of his act, whatever the likelihood of that result happening from his conduct" or (2) "know[ ] that the result is substantially certain to follow from his conduct, whatever his desire maybe as to that result."[50] The focus is on the consequences of the act rather than the act itself: "Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[51]

A plaintiff's burden "for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting,"[52] "and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception

---

[47] Honeywell is correct that Plaintiff's pleadings do not allege an intentional tort until he argues that the intentional act exception applies in his *Opposition*. Nevertheless, although this claim has not been properly pled, the Court will address this claim.

[48] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So.2d 208, 210; La. R.S. § 23:1032(b).

[49] *Bazley v. Tortorich*, 397 So.2d 475, 480 (La. 1981).

[50] *Id.* at 481; *see also White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves*, 731 So.2d at 211.

[51] *White*, 585 So.2d at 1208.

[52] *Hodges v. The Mosaic Co.*, No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007).

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 13 of 19

is to be narrowly interpreted."[53] As such, the standard for prevailing on a claim of intentional tort under Louisiana law is "extremely high."[54] "Even knowledge of a high degree of probability that injury will occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the worker's compensation statute exclusive remedy provisions."[55] Therefore, "[s]ubstantial certainty requires more than a reasonable probability that an injury will occur; this term has been interpreted as being equivalent to inevitable, virtually sure and incapable of failing."[56]

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."[57] Mere knowledge and appreciation of risk alone, do not constitute

---

[53] *Chiasson v. Hexion Specialty Chemicals, Inc.*, No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012)(citing *e.g., Reeves*, 731 So.2d at 211–12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1140–41; *Snow v. Lenox Int'l*, 27,533 (La.App. 2 Cir. 11/1/95), 662 So.2d 818, 820; *Rogers v. La. Dept. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, 259, *writ denied*, 992 So.2d 931 (La.2008); *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458 , *writ denied*, 666 So.2d 674 (La.1996); *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320 (5th Cir.1996); *Dark v. Georgia–Pacific Corp.*, 176 F. App'x 569 (5th Cir.2006)).

[54] *Wilson v. Kirby Corporation*, No. 12-0080, 2012 WL 1565415, at * 2 (E.D. La. May 1, 2012).

[55] *Id.*, citing *King v. Schulykill Metals Corporation*, 581 So.2d 300, 303 (La. App. 1 Cir. 1991).

[56] *Id.*, quoting *King*, 581 So.2d at 302 (internal citations omitted).

[57] *Reeves*, 731 So.2d at 210 (quotation omitted); *see also Micele v. CPC of Louisiana, Inc.*, 98-0044 (La. 4 Cir. 3/25/98), 709 So.2d 1065(noting that courts in Louisiana "have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety equipment by an employer does not constitute intentional wrongdoing") (citations omitted)).

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 14 of 19

intent.[58] Furthermore, even an employer's knowledge that a machine is dangerous does not give rise to substantial certainty that injury will result.[59] "[B]elieving that someone may, or even probably will, eventually get hurt if the workplace practices continue does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[60] Moreover, even knowledge that similar injuries have occurred in the past does not establish that injury is substantially certain to occur in the future,[61] and violations of safety standards are generally insufficient to fulfill the substantial certainty requirement.[62] An employer's failure to properly train an employee is also insufficient to maintain an intentional tort claim.[63] Likewise, "actions which lead to a 'high probability' of injury do not rise to the level of substantial certainty, and even where acts or omissions constitute gross negligence, the substantial certainty exception is not met."[64]

In the present case, Plaintiff claims that Honeywell "intentionally put its employees

---

[58] *Williams v. Gervais F. Favrot Co.*, 573 So.2d 533 (La. App. 4 Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991).

[59] *Id.*, citing *Marino*, 931 So.2d at 1090 (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140 (La.App. 4 Cir.1993), *writ denied*, 629 So.2d 347 (La.1993)); *see also Guillory*, 95 F.3d at 1327 ("The substantial certainty test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable .").

[60] *Dark*, 176 F. App'x at 571 (quoting *Reeves*, 731 So.2d at 211-12).

[61] *Snow*, 662 So.2d at 820.

[62] *Reeves*, 731 So.2d at 211.

[63] *See, e.g., Rogers*, 982 So.2d at 258-59; *Armstead*, 618 So.2d at 1143; *Carr v. Spherion*, No. 08-0326, 2009 WL 455408, at *9-10 (W.D. La. Jan. 28, 2009).

[64] *Chaisson*, at *6, quoting *Guillory*, 95 F.3d at 1327-28 (finding that even where some employees and supervisors were aware that several forks had detached from forklifts and some employees knew the subject forklift had fallen off, the evidence established only, at best, negligence).

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 15 of 19

and visitors in harms [sic] way because the plant was consistently producing products while the compressor was not installed in the Honeywell plant's safety operation."[65] Plaintiff further contends that Honeywell's management "knew that the result of chemical leak and exposure to those chemicals was substantially certain to follow from operating the plant absent a safety shutdown system."[66] In further support of this theory of recovery, Plaintiff argues that Honeywell failed to adequately train him, that he was not provided proper safety equipment for the job, that he was not advised where he could locate the respirators, and he was not warned of "known imminent dangers and possible exposure to same," and that after the incident, Honeywell failed to inform him or those providing him medical treatment with information about the chemical to which Plaintiff was exposed.[67]

Honeywell challenges Plaintiff's claims that it intentionally exposed Plaintiff to chemicals, that it failed to properly train Plaintiff, and that Plaintiff was never provided a respirator. Honeywell cites Plaintiff's deposition testimony where he clearly admitted that he received on-site training specific to the Honeywell facility before ever entering.[68] Plaintiff also admitted that this training included instruction on the use of the respirators.[69] According to Honeywell, Plaintiff acknowledged in his deposition that when Plaintiff reported a "smell" upon arrival to the work site, the Honeywell employees to whom he

---

[65] Rec. Doc. No. 18, p. 8.

[66] *Id.*

[67] Rec. Doc. No. 18-1, Nos. 5-9.

[68] Rec. Doc. No. 19, p. 12, citing Rec. Doc. No. 19-1 (Exhibit E), Deposition of Brian Simmons, p. 42, line 11 - p. 43, line 14.

[69] *Id.*, citing Rec. Doc. No. 19-1 (Exhibit E), Deposition of Brian Simmons, p. 92, lines 2-6.

reported the smell investigated this complaint before he began working and continued to occasionally check on him throughout the day.[70] Honeywell argues there is no evidence in the record that any Honeywell employee had prior knowledge that a release of chemicals would occur such that Honeywell intentionally exposed Plaintiff to chemicals.

The Court finds the analysis and decision in *Frank v. Shell Oil Company*[71] applicable in the present case. In *Frank*, the surviving spouse of a refinery worker sued the oil company and its insurer on behalf of herself and her husband, alleging that her husband's exposure to benzene at the refinery caused the development of leukemia. Among several other claims, the plaintiff asserted a claim for intentional tort. Shell moved to dismiss arguing the plaintiff's claims were barred by the exclusive remedy provision of the LWCA.[72] The plaintiff alleged that Shell was "well aware of the serous health hazards associated with the use of benzene," and that Shell "should have provided adequate and safely designed protective equipment, and conducted medical examinations as appropriate."[73] The plaintiff also alleged that the actions of Shell "were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage or injury to the Plaintiffs," and that Shell "consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to Welman Frank and other employees" such that Shell "should be held liable for the intentional inflictions of physical

---

[70] *Id.*, citing Rec. Doc. No. 19-3 (Exhibit G), Deposition of Barry McClay, pp. 7-10.

[71] 828 F.Supp.2d 835 (E.D. La. 2011).

[72] *Id.* at 840.

[73] *Id.* at 849.

Case 3:12-cv-00674-SDD-RLB   Document 20   10/21/13   Page 17 of 19

injury upon its employee."[74] The plaintiff also alleged that Shell had intentionally exposed Frank to benzene and knew with substantial certainty that the work conditions imposed would result in exposure to benzene which would naturally result in the disease from which he suffered.[75] The court granted Shell's motion and held:

> Plaintiff has not sufficiently alleged intentional tortious behavior on the part of Shell to prevent dismissal of her post–1975 claims. These allegations do not demonstrate Shell was "substantially certain" Mr. Frank would be diagnosed with ALL Leukemia due to his exposure to benzene and benzene-related substances, but rather indicate that Shell "knowingly permitt[ed] a hazardous work condition to exist, knowingly order[ed] claimant to perform an extremely dangerous job, or willfully fail[ed] to furnish a safe place to work," all of which the Louisiana Supreme Court holds is insufficient for an intentional tort.[76]

The Court finds the allegations in *Frank* analogous to the present case. It is clear to the Court that the allegations in Plaintiff's *Opposition* amount to negligence, despite the use of certain legal phrases in an attempt to transform the claims to intentional torts. As discussed above, a plaintiff cannot merely include the word "intentional" or the phrase "substantially certain" in a complaint or pleading to avoid application of the exclusive remedy provision of the LWCA. Plaintiff has failed to present any summary judgment evidence that Honeywell intended to harm the Plaintiff or that said harm was substantially certain to occur. Therefore, even accepting all of Plaintiff's allegations as true, the Court finds Plaintiff has failed to present genuine issues of material fact that Honeywell's actions

---

[74] *Id.* at 849-50.

[75] *Id.* at 850.

[76] *Id.*, (*See Reeves*, 98–1795, at p. 5, 731 So.2d at 210; *see also Zimko*, 2003–0658, at pp. 10–18, 905 So.2d at 475–80; *Perret v. Cytec Indus., Inc.*, 04–745 (La.App. 5 Cir. 11/30/04), 889 So.2d 1121, 1125–26.

fall under the intentional act exception as discussed above, and Honeywell is entitled to summary judgment as a matter of fact and law.

## III. Conclusion

For the reasons set forth above, the *Motion for Summary Judgment* by Defendant Honeywell International, Inc. is hereby GRANTED.[77] Plaintiff Brian Simmons' claims are hereby DISMISSED with prejudice.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

BATON ROUGE, Louisiana, this 21 day of October, 2013.

*Shelly D. Dick*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[77] Rec. Doc. No. 14.

Doc 568

19